**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IRENE ODETTE HILL, | CASE NO. CV 17-8788 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Irene Odette Hill ("Plaintiff") brings this action, seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for Supplemental Security Income.  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13).  For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On July 25, 2014, Plaintiff filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act") alleging a disability onset date of July 25, 2014. (AR 83, 169-76). The Commissioner denied Plaintiff's application initially and upon reconsideration. (AR 83, 97, 100-04, 109-14). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on June 16, 2016. (AR 46-62, 116). The ALJ issued an adverse decision on September 7, 2016, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that she can perform. (AR 18-24). On November 7, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-7). This action followed on December 6, 2017.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on October 18, 1965. (AR 169). She was fifty (50) years old when she appeared before the ALJ on June 16, 2016. (AR 46). Plaintiff is unmarried and lives with her nine-year-old son. (AR 53-54, 169, 196). Plaintiff has a high-school education. (AR 190). She has not worked in the fifteen years prior to her alleged onset date. (AR 190). She alleges disability due to high blood pressure and leg pain. (AR 189).

## A.    Plaintiff's Statements And Testimony

On July 31, 2014, Plaintiff stated that she is unable to work due to symptoms and restrictions resulting from high blood pressure and leg pain.  (AR 194).  She asserted experiencing debilitating pain in her leg and harm.  (AR 194).  She has difficulty bending, kneeling, rising from a sitting position, hand manipulation, grasping objects, balancing, and concentrating.  (AR 194).  She also experiences shortness of breath, depression, anxiety, disturbed sleep patterns, and memory loss.  (AR 194).

On August 12, 2014, Plaintiff submitted an Adult Function Report.  (AR 204-12).  She asserted that her impairments limit her ability to lift, stand, bend, sit, kneel, and reach.  (AR 204). She has trouble sleeping, dressing, and bathing due to her pain. (AR 205).  Plaintiff is able to feed herself and do light household chores.  (AR 206).  She is able to walk, ride in a car, use public transportation, and shop for food, clothing, and personal items. (AR 207).  Plaintiff watches television, plays games with her son, socializes with family, and attends church on a regular basis.  (AR 208).[1]

---

[1]    On August 11, 2014, Robin Scott, who has known Plaintiff for most of her life, submitted a Third Party Function Report, which largely mirrored Plaintiff's Function Report.  (Compare AR 204-12, with id. 195-203; see id. 89 (State agency consultant noting that Plaintiff's alleged activities of daily living mirrors third party's statements)).

At her June 2016 hearing, Plaintiff testified that she has not worked in the past fifteen years due to health problems, including her heart situation, poor circulation in her legs, and tingling. (AR 50). She experiences daily heart flutters, along with chest pain. (AR 51). About once a month, Plaintiff has swelling and numbness in her left leg and foot, which lasts for three to four days. (AR 52). When this occurs, she walks with a limp. (AR 52). Plaintiff's poor circulation also causes heel pain in both feet. (AR 52).

Plaintiff testified that she can walk for less than a block before needing to rest for twenty-five minutes due to shortness of breath. (AR 54-55). She can stand for ten to fifteen minutes before needing to sit down and rest for twenty-five minutes. (AR 54-55). She needs to elevate her legs for one-to-two hours daily. (AR 55).

**B.    September 2008 Decision**

In a prior decision dated September 25, 2008 ("September 2008 Decision"), the ALJ found that Plaintiff's congenital and benign arterial heart blockage and hypertension limited her to a reduced range of light work. (AR 68-69). Specifically, the September 2008 Decision determined that Plaintiff was able to walk and stand for six hours, occasionally climb, balance, kneel, bend, crouch, stoop, and crawl, and frequently walk an uneven surfaces, climb ladders, and work at heights. (AR 69). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ found

that Plaintiff could perform her past relevant work as a cafeteria worker, both as she performed it and as generally performed. (AR 69-70). Thus, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, since June 26, 2007, the date of the prior application. (AR 70).

## C. **Treatment History**

In support of her current application, Plaintiff submitted only a few medical records from Pagiel Shechter, M.D., her treating physician. (AR 281-92). An August 2014 x-ray of Plaintiff's right knee indicated mild calcified enthesopathy at the superior pole of the patella. (AR 291). On August 31, 2014, Dr. Shechter opined that Plaintiff is disabled due to hypertension, heart disease, arthritis of knees, and cardiomyopathy. (AR 263).

On September 13, 2014, after treating Plaintiff on a monthly basis for "years," Dr. Shechter completed a Medical Source Statement. (AR 266-68). He diagnosed hypertension, cardiovascular disease, anemia, and degenerative joint disease and noted that Plaintiff's prognosis was "guarded." (AR 266). Plaintiff's symptoms include pain and weakness. (AR 266). Dr. Shechter opined that Plaintiff can stand or walk less than two hours in an eight-hour workday and requires a job that permits her to shift positions at will. (AR 267). He further opined that Plaintiff can occasionally lift less than ten pounds, rarely lift ten pounds, rarely twist or stoop, and never crouch, squat, climb ladders, or climb stairs. (AR 267). Dr. Shechter also opined that Plaintiff's

pain is occasionally severe enough to interfere with the attention and concentration necessary to perform even simple work tasks. (AR 268). He concluded that Plaintiff is capable of low stress jobs and would likely miss one day a month as a result of her impairments. (AR 268).

On February 3, 2015, Plaintiff complained of leg numbness. (AR 285). A physical examination was unremarkable. (AR 285). While a blood test indicated an increased risk for diabetes, in all other respects the test was unremarkable. (AR 286-90). Dr. Shechter diagnosed hypertension and cardiovascular disease and referred Plaintiff to a podiatrist. (AR 285). A June 2015 follow-up examination was unremarkable. (AR 284). Dr. Shechter diagnosed hypertension, cardiovascular disease, and neuropathy and referred her for a mammogram and a GI examination. (AR 284). On October 8, 2015, Plaintiff complained of dizziness, frequent urination, and weight loss. (AR 283). A physical examination was unremarkable. (AR 283). Dr. Shechter adjusted Plaintiff's medications and suggested that Plaintiff drink more water and fruit juices. (AR 283). On February 18, 2016, Plaintiff complained of bilateral heel pain, but less dizziness. (AR 282). Other than tenderness in Plaintiff's heels, a physical examination was normal. (AR 282). Dr. Shechter ordered bilateral heel x-rays. (AR 282). A March 2016 follow-up examination was unremarkable. (AR 281).

On September 26, 2014, Steven B. Gerber, M.D., conducted a complete internal medicine evaluation on behalf of the Commissioner. (AR 270-74). Plaintiff's chief complaint was leg

pain.  (AR 270).  She reported bilateral, constant, sharp pain in her lower legs, which is exacerbated by prolonged sitting and walking and relieved with medication.  (AR 270).  On examination, Plaintiff was in no distress.  (AR 271).  She was able to get on and off the examination table without difficulty and no resting ataxia or dyspnea was noted.  (AR 271).  Plaintiff had normal range of motion and strength in all extremities and was able to ambulate normally.  (AR 271, 273-74).  A review of Plaintiff's cardiovascular systems indicated no evidence of heaves, thrills, murmurs, rubs, or gallops, and she had regular heart rate and rhythm.  (AR 272).  In summary, Dr. Gerber noted "no physical findings on examination to account for [Plaintiff's] subjective complaint[s]."  (AR 274).  He concluded that Plaintiff "has no functional limitations at this time."  (AR 274).

**D.  Medical Expert**

John R. Morse, M.D., a cardio disease specialist, testified at Plaintiff's hearing as a medical expert.  (AR 56-58; see id. 153).  Dr. Morse affirmed that he reviewed all of the medical records.  He concluded that "the evidence documents no medically determinable impairments, none whatsoever."  (AR 57).

> Dr. Schechter's [sic] notes are woefully insufficient.
> There's a statement about cardiomyopathy, hypertension,
> cardiomyopathy [sic], which is not supported by anything
> in the record.  All I have is a CE examiner in September
> [20]14, which found no, no objective abnormalities, no

medically determinable impairments, and offered no residual functional capacity limitations. The rest of the records are of no use whatsoever. What you've read to me [from the September 2008 Decision] is interesting. I suspect it is not indicative of underlying organic heart disease. It may or may not be, but we would need echocardiographic data, we would need a cardiological consult, we would need a whole bunch of information to validate a medically determinable impairment in the cardiovascular system.

(AR 57) (citations omitted). When asked about the results of Plaintiff's February 2015 blood test, Dr. Morris confirmed that it indicated "prediabetic, but not diabetic." (AR 57). He also observed that the August 2014 x-ray "may indicate some arthritis of [Plaintiff's] right knee." (AR 57).

**E.    State Agency Consultants**

On October 6, 2014, L. DeSouza, M.D., a State agency consultant, reviewed the available medical record, including records associated with the September 2008 Decision, and concluded that Plaintiff's congenital anomalies of the heart is a severe impairment. (AR 76-78). Dr. DeSouza opined that Plaintiff can occasionally lift twenty pounds, frequently lift ten pounds, and can stand, walk, and sit for six hours in an eight-hour workday, with normal breaks. (AR 79). He further concluded that Plaintiff can occasionally crawl and climb ramps, stairs, ladders, ropes,

and scaffolds, and can frequently balance, kneel, and crouch.  (AR 79-80).  Dr. DeSouza, after reviewing the September 2008 Decision, suggested adopting the prior ALJ's RFC, "as there is no new material change" in Plaintiff's impairments.  (AR 77).

On February 25, 2015, B. Morgan, M.D., another State agency consultant, reviewed the available medical record and opined that Plaintiff can frequently climb ramps and stairs.  (AR 93).  Otherwise, Dr. Morgan concurred with Dr. DeSouza's assessment.  (AR 89, 91-93).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an

10

affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (AR 18). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 25, 2014, the application date. (AR 20). At step two, the ALJ found that Plaintiff's history of congenital and benign arterial heart

blockage and hypertension are severe impairments. (AR 20). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 20).

The ALJ then assessed Plaintiff's RFC and concluded she can perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b):[2] "[Plaintiff] can sit, stand and walk for 6 hours in an 8 hour day with normal breaks. She can occasionally climb ladders, ropes and scaffolds and can frequently climb ramps and stairs. [Plaintiff] can frequently balance, kneel and crouch and occasionally crawl." (AR 20-21). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 23). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including light inspector hand packager, bench assembler, and routing clerk. (AR 23-24). Accordingly, the ALJ

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

found that Plaintiff has not been under a disability, as defined by the Act, since July 25, 2014, the application date. (AR 24).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

13

21 (citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

### DISCUSSION

Plaintiff asserts that the ALJ erred in rejecting the functional assessments of her treating physician, Dr. Shechter. (Dkt. No. 20 at 4-7).

An ALJ must take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995), <u>as amended</u> (Apr. 9, 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [(nonexamining)] physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); <u>accord</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014). "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.' " <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Id.; see also Reddick, 157 F.3d at 725 (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.").  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

his interpretation thereof, and making findings." <u>Trevizo v.</u> <u>Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.' " <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician <u>or</u> a treating physician." <u>Lester</u>, 81 F.3d at 831 (emphasis in original). Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. <u>Bayliss</u>, 427 F.3d at 1216; <u>Tonapetyan v.</u> <u>Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).

In September 2014, Dr. Shechter completed a Medical Sources Statement. (AR 266-68). Dr. Shechter opined that pain and weakness from Plaintiff's impairments limit her to standing or walking less than two hours in an eight-hour workday. (AR 266-67). He also opined that Plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking. (AR 267). Dr. Shechter concluded that Plaintiff can occasionally lift less than ten pounds, frequently lift ten pounds, rarely twist or stoop (bend), and never crouch, squat, or climb ladders or stairs. (AR 267). He also opined that Plaintiff's pain is severe enough to occasionally interfere with her ability to sustain the attention and concentration necessary to perform even simple work tasks. (AR

268).  Finally, Dr. Shechter concluded that Plaintiff's impairments would cause her to miss one day of work per month.[3]  (AR 268).

The ALJ rejected Dr. Shechter's opinion because it was "not supported by any findings, test results or laboratory results." (AR 22).  Because Dr. Shechter's opinion was contradicted by the consultative examiner, the medical expert, and the State Agency consultants, the Court reviews the ALJ's rejection of Dr. Shechter's opinion for "specific and legitimate reasons that are supported by substantial evidence."  Bayliss, 427 F.3d at 1216; see Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("The ALJ could reject the opinions of Moore's examining physicians, contradicted by a nonexamining physician, only for specific and legitimate reasons that are supported by substantial evidence in the record.") (citation omitted).  The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Shechter's opinion.

Dr. Shechter's largely "check-off" opinion was not supported by objective or clinical evidence.  Medical opinions that are inadequately explained or lack supporting clinical or laboratory findings are entitled to less weight.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected "check-off reports

---

[3]  On August 31, 2016, Dr. Shechter opined that Plaintiff "is disabled due to hypertension, heart disease, osteoarthritis of knees, [and] cardiomyopathy."  (AR 263).  However, whether a claimant is disabled is an issue reserved to the Commissioner.  20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

that did not contain any explanation of the bases of their conclusions"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ properly rejected physician's opinion where it was "conclusory and unsubstantiated by relevant medical documentation"); see also 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). The only record submitted that predated Dr. Shechter's opinion, an x-ray of Plaintiff's right knee, indicated only mild arthritis. (AR 291; see id. 57). Further, physical examinations by Dr. Shechter during the relevant period did not reflect the extreme functional limitations that he assessed. See Buck v. Berryhill, 869 F.3d 1040, 1050 (9th Cir. 2017) ("A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes."). Physical examinations in February, June, and October 2015 were all unremarkable. (AR 283-85). In February 2016, other than tenderness in Plaintiff's heels, a physical examination was normal. (AR 282). A March 2016 follow-up examination was unremarkable. (AR 281).

Dr. Shechter variably diagnosed hypertension, cardiovascular disease, arthritis, cardiomyopathy, anemia, degenerative joint disease, and neuropathy. (AR 22, 263, 266, 284). However, the mere existence of these impairments does not provide conclusive support for the extreme disabling limitations opined by Dr.

Shechter. Indeed, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."). Even if a claimant receives a particular diagnosis, it does not necessarily follow that the claimant is disabled, because it is the claimant's symptoms and true limitations that generally determine whether she is disabled. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Dr. Shechter cites no clinical tests in support of his extreme limitations.

Plaintiff's impairments have resulted primarily in symptoms of pain, weakness, numbness, and dizziness. (AR 22, 266, 283, 285). It appears, however, that Dr. Shechter has been able to ameliorate many of Plaintiff's symptoms with medications. (See, e.g., AR 282-83) (after adjusting Plaintiff's medications, her dizziness symptoms improved). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Plaintiff argues that the ALJ's "single sentence" rejection of Dr. Shechter's opinion does not provide the level of specificity required by Ninth Circuit caselaw. (Dkt. No. 20 at 6-7). Indeed, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." <u>Garrison</u>, 759 F.3d at 1012-13. Here, however, the ALJ provided a detailed discussion of the medical records and the various medical opinions, explaining why he assigned each of the opinions the weight that he did. (AR 22-23). Given that Dr. Shechter's discrete records, including his opinions, consisted of only sixteen pages (AR 263, 266-68, 278, 281-91), the ALJ's discussion of Dr. Shechter's opinion was sufficiently specific and supported by substantial evidence.

Further, the opinions of Drs. Gerber and Morse support the ALJ's rejection of Dr. Shechter's opinion and the ALJ's nondisability finding. <u>Tonapetyan</u>, 242 F.3d at 1149 ("The contrary opinions of [the consultative examiner and the medical expert] serve as additional specific and legitimate reasons for rejecting the opinions of [the treating physicians], and provide assurance that the record was sufficiently developed with regard to the issue of physical impairment."). After performing a complete internal medicine evaluation, Dr. Gerber found "no physical findings on examination to account for [Plaintiff's] subjective complaint[s]." (AR 274; <u>see</u> <u>id.</u> 22). Based on his formal testing and observations of Plaintiff's spontaneous actions, Dr. Gerber concluded that Plaintiff "has no functional limitations at this time." (AR 274; <u>see</u> <u>id.</u> 22). After reviewing the entire medical file, Dr. Morse testified that "the evidence documents no medically determinable impairments, none whatsoever." (AR 57). He found Dr. Shechter's treatment notes "woefully insufficient" to document the existence of any of Dr. Shechter's diagnoses. (AR 57). Other than Dr.

Gerber's report, Dr. Morse found the medical records "of no use whatsoever." (AR 57).

Finally, the ALJ properly rejected Dr. Shechter's opinion because it was contradicted by the State agency consultants' opinions. (AR 22-23). "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The State agency consultants found that because the record included "no new material change," from the RFC determination previously set forth in the September 2008 Decision. (AR 77, 89). "[A]n ALJ's findings that a claimant is not disabled creates a presumption that the claimant continued to be able to work after that date." Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009) (citation omitted). The September 2008 Decision found that Plaintiff was capable of a reduced range of light jobs and determined that she was not disabled because she was capable of performing her past relevant job as a cafeteria worker, both as she performed it and as generally performed. (AR 69-70). Thus, because the current record indicated "no material change," the ALJ largely adopted the prior decision's RFC. (Compare AR 69, with id. 20-21). Indeed, the ALJ gave Plaintiff "the benefit of the doubt" (AR 22) that her impairments had not improved since the September 2008 Decision was issued.

Plaintiff contends that "if the ALJ believed that Dr. Shechter did not provide sufficient supporting documentation, he should have sought clarification." (Dkt. No. 20 at 6-7 & n.3). However, it is Plaintiff's burden to establish her disability with acceptable medical evidence. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis."). Indeed, "[f]ailure to prove disability justifies a denial of benefits." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). In narrow circumstances, "[a]n ALJ is required to recontact a doctor . . . if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." Bayliss, 427 F.3d at 1217; see 20 C.F.R. §§ 404.1512(e), 416.912(e). Here, there were no ambiguities in Dr. Shechter's report. He clearly opined that Plaintiff was unable to stand or walk more than two hours in an eight-hour workday and could only occasionally lift less than ten pounds. (AR 267). The ALJ did not reject Dr. Shechter's opinion because it was ambiguous. Instead, the ALJ rejected the opinion because it was not supported by any objective evidence and was directly contrary to the opinions of Drs. Gerber and Morris. (AR 22-23).

The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Shechter's opinion, and no remand is required.

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 10, 2018

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**